**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**PATRICIA SHINN, on behalf of Y.D.S.,**

        **Plaintiff,**

**-vs-**                                                   **Case No. 6:10-cv-1932-Orl-31DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for Supplemental Security Income benefits, on behalf of her minor child.[1] For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

# Procedural History

The case presents with a lengthy history. Plaintiff, Claimant's mother, filed an application for Child's Supplemental Security Income (SSI) on behalf of Claimant on December 10, 1998 (R. 47-50). The claim was denied initially and on reconsideration (R. 51-52, 55-57). Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 24-46, 58), and, on February 15, 2001, the ALJ issued an unfavorable decision (R. 10-21). The Appeals Council denied a Request for Review of the hearing decision (R. 4-5), and Plaintiff filed an action in this Court for review. *See*

---

[1] For ease of reference throughout this Report, the Court refers to the minor child as "Claimant" and her mother as "Plaintiff."

*Shinn o/b/o Shinn v. Comm'r of Social Security,* No. 6:02-cv-668-Orl-31DAB (M.D. Fla. May 30, 2003). Following a recommendation of the undersigned, the District Court affirmed the Commissioner's decision (R. 301-02). Plaintiff appealed to the Eleventh Circuit Court of Appeals, and on November 30, 2004, the Eleventh Circuit remanded the case to the Commissioner for further administrative proceedings pursuant to sentence-four of 42 U.S.C. § 405(g). *Shinn o/b/o Shinn v. Comm'r of Social Security*, 391 F.3d 1276 (11th Cir. 2004). On January 31, 2005, the District Court remanded the case to the Commissioner for further proceedings consistent with the opinion of the Eleventh Circuit (R. 281), and the Appeals Council subsequently remanded the case to a new ALJ for further proceedings (R. 307-309).

Upon remand, another administrative hearing was held on May 3, 2006, and on September 7, 2006, the new ALJ issued an unfavorable decision, finding that Claimant was not disabled (R. 267-80, 280A, 660-695). Plaintiff filed exceptions to the ALJ's decision, and on June 12, 2007, the Appeals Council remanded the case for further action (R. 410-14). New hearings were held on November 14, 2007 and January 8, 2008, and another unfavorable decision was rendered on April 25, 2008 (R. 238-63, 696-724). Plaintiff again sought administrative review and, on November 19, 2009, the Appeals Council issued an order of remand, because the recording of the January 8, 2008 hearing could not be located (R. 236- 237).

A new hearing was held before a new ALJ on March 10, 2010 (R. 732-782). On August 25, 2010, the third ALJ issued a new decision finding Claimant not disabled (R. 207-231). The Appeals Council denied review (R. 196-98), making the August 25, 2010 decision the final decision of the Commissioner, and Plaintiff filed the instant action for review under 42 U.S.C. § 1383(c)(3). The matter has been fully briefed and has been referred to the undersigned for issuance of a Report and Recommendation.

## Nature of Claimed Disability

The child claims disability since birth due to sickle cell disease (R. 47 and 67).

### *Summary of Evidence Before the ALJ*

Claimant was fourteen years old at the time of the most recent administrative decision (R. 217) and a student. Her pertinent medical history is set forth in great detail in the ALJ's decision and, in the interests of privacy, is set forth in this opinion only as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the testimony of both Claimant and Plaintiff, a letter from Claimant's teacher, and opinions from a testifying medical expert and examining and non-examining consultants. By way of summary, the ALJ found that Claimant's sickle cell disease was a "severe impairment," but this impairment did not meet or equal the criteria for any listed impairment, including the listing for sickle cell disease, 20 C.F.R. pt. 404, subpt. P, app. 1, § 107.05A (Listing 107.05A) (R. 217, 222-25). As the Claimant's impairment did not meet or medically or functionally equal the criteria specified in the Listings (R. 219-230), the ALJ determined that Claimant was not disabled under the Social Security Act.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, a claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner employs a three-step evaluation process. First he determines whether the claimant is engaged in substantial gainful activity. If not, the next determination is whether the claimant has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment or combination of impairments meet *or* is medically *or* functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfy the duration requirement. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924-416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

Here, as set forth in the record and in Plaintiff's brief: "the only issue in this case is whether or not [the child] meets the criteria of Listing 107.05A." (Doc. No. 20 at 6-7, R. 737).[2] As noted by the Court of Appeals, a child's impairment meets a listed impairment if "the child actually suffers from the limitations specified in the Listings for that child's severe impairment." *Shinn*, 391 F.3d at 1279. To meet Listing 107.05A, Claimant must establish that she has sickle cell disease with "[r]ecent, recurrent, severe vasoocclusive crises." 20 C.F.R. pt. 404, subpt. P, app. 1, § 107.05A. Plaintiff argues that the ALJ's finding that Claimant's disease did not meet the criteria of any listed impairment is not supported by substantial evidence and involves the application of incorrect legal standards.

*The Administrative Decision Contained Sufficient Findings*

Plaintiff first contends that: "The problem in this case is that the ALJ did not make findings on these facts, much less well reasoned, well articulated findings on these facts." (Doc. No. 20 at 6). This contention is without merit. In a lengthy opinion, the ALJ discussed both medical and non-medical evidence, made detailed findings regarding same,[3] and concluded that the evidence did not establish that Claimant met this Listing (R. 207-231). While Plaintiff clearly does not agree with the ultimate finding, there is no merit to the suggestion that the ALJ failed to articulate a detailed rationale for her conclusions.

*The Administrative Decision is Supported by Substantial Evidence*

Plaintiff next contends that the finding that Claimant does not meet this Listing is unsupported by substantial evidence in that: 1) the ALJ found Claimant to have the "severe" impairment of sickle

---

[2] Plaintiff does not raise any challenge to the ALJ's finding that the Claimant's condition is not the functional equivalent of the Listings (Doc. No. 20 at 7).

[3] The findings are numerous, and include a finding of "no documentation of severity and duration" of the crises (R. 222).

-5-

cell disease; 2) "[t]he regulations define severity as one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations'" and therefore, Claimant's crises are severe; 3) Claimant has been experiencing crises since she was about ten months old, and therefore, her crises are recurrent; and 4) Claimant testified that she had a crisis two days prior to the administrative hearing, so the crises are recent. This analysis is flawed.

First, Plaintiff errs in equating a finding of a severe impairment at step two of the three step analysis (20 C.F.R. § 416.924(c)) with a finding that a claimant's vasoocclusive crises are "severe" as defined in the Listings (20 C.F.R. pt. 404, subpt. P, app. 1, §§ 107.00A, 107.05A). Plaintiff cites no authority that has interpreted the Listing in this manner, and the Court finds such an interpretation to be unpersuasive. As noted, the threshold at step two is minimal, requiring only a condition that results in more than slight limitations. While the *impairment* need only cause more than minimal limitations in order to move to the next step of the analysis, the *crises* must be severe in order to meet the requirements of that next step – the Listings. "More than minimal" is simply not the equivalent of "recent, recurrent, severe." [4]

Next, Plaintiff's contention that the administrative decision is erroneous is based on certain record evidence that Plaintiff contends supports a finding of disability. This approach misinterprets the Court's task on review. The issue is not whether there is evidence to support Claimant's

---

[4]Further, as noted by the Commissioner, the ALJ heard and relied upon the testimony of a medical expert in sickle cell disease (R. 700), who had reviewed Claimant's records and who stated his familiarity with the Listing at issue. Dr. Rubini testified regarding the definition of a "severe" pain crisis (R. 707, 717), noting that a "severe" pain crisis is one that does not "respond well even to pain medication," and a minor crisis is one that usually occurs, "and [is] then reported later on" (R. 717-18). Dr. Rubini also testified that pain crises that do not involve hospitalization are "minor" (R. 707). He testified that claimant had "very very few crises" (R. 703), "some pain episodes, but they're not severe" (R. 704), and that her records showed "minor" pain crises or routine follow-up visits with physicians (R. 705-09, 719, 722). Dr. Rubini testified that "[Claimant] does not meet any listing" (R. 709) and stated: "With this child, I felt that she certainly was having [inaudible] sickling events, but they were not severe, and they were relatively infrequent." (R. 712).

application but whether there is substantial evidence to support the administrative decision. The Court finds that there is.

As set forth in the administrative decision, the claimant was diagnosed with sickle cell disease at two months old (R. 28). Her first hospital admission relating to the disease was on February 22, 1997 (R. 97). She presented with a fever and vomiting. Following treatment, she was discharged on February 25, 1997.

Claimant was again hospitalized on August 20, 1997 (R. 109-111). She was seen by Vincent F. Giusti, M.D. who diagnosed hemoglobin sickle cell disease with symptoms probably related to possible pain crisis (R. 111). She was discharged two days later (R. 109) with a diagnosis of fever, HB-S disease without crisis and hypovolemia. *Id.*

Claimant was not hospitalized again until August 17, 1998 (R. 121). She was discharged on August 19, 1998 in stable condition, without complications (R. 121-122).

Claimant was admitted to the hospital a fourth time on September 21, 1998, with a diagnosis of hemoglobin sickle cell disease and sickle cell crisis, resolved (R. 126). At the time of admission, she did not have a fever, diarrhea or any UTI [urinary tract infection] symptoms. She did have abdominal pain, which resolved with pain medications, and she was discharged on September 23, 1998 in stable condition, without pain, looking better and eating well (R. 126-127). This was the last hospitalization noted in the medical record.

Judith E. Wall, M.D., a pediatric oncologist, treated the claimant beginning July 11, 1996 (R. 160-175 and 192). On September 17, 1996, claimant presented to Dr. Wall for routine follow-up (R. 167). Dr. Wall reported that she was doing well and physical examination was unremarkable. *Id.* On December 20, 1996, she returned to Dr. Wall with a fever of 99.5 degrees but otherwise "doing well."

(R. 166). She next presented to Dr. Wall on February 29, 1997, following her first hospitalization (R. 165). At that examination, Dr. Wall reported that she "looks quite well."

Claimant returned for follow-up with Dr. Wall on July 8, 1997 (R. 164). At that time, she was assessed with "Hemoglobin SC disease, doing well." *Id.* She returned for a "regular check up" with Dr. Wall on February 23, 1999 (R. 163). According to the progress notes: "She has had no problems and no hospitalizations since August or September of 1998." *Id.* Assessment was, again, "a hemoglobin SC doing well." *Id.* On her next scheduled visit of August 24, 1999, Plaintiff reported "no crisis since April." (R. 162). Again, Dr. Wall noted that Claimant was "doing well."

Claimant returned to the clinic on November 16, 1999, where it was noted that she was "doing quite well" and "rarely had complaints of pain." (R. 403). Her provider noted that Claimant "could engage in most activities" as long as she drank fluids and rested. *Id.* Claimant returned for routine follow up on December 18, 2001 (R. 362). No current problems were noted.

Sporadic visits followed. On October 8, 2002, Claimant reported one pain crisis that responded to fluids and medication (R. 360). On February 11, 2003, Claimant was "doing well with no problems" except for upper respiratory symptoms from an upper respiratory infection (R. 357). On April 7, 2003, it was noted that "she looks quite good" with no bony pain (R. 354-355). On June 10, 2003, Claimant presented for routine follow-up (R. 351-53). It was noted that in the last six months there were fewer than five episodes of crisis and none requiring hospitalization (R. 352). Examination was unremarkable, with Plaintiff noting Claimant was doing well (R. 353). On follow-up visit December 17, 2003, Claimant was assessed as "doing well with minimal numbers of crises." (R. 349).

Almost a year later, on December 14, 2004, Claimant presented with a pain crisis (R. 346). She was treated conservatively with fluids and medication. Progress notes of November 9, 2005,

reveal another pain crisis, which Claimant rated 2 on a five point scale (R. 340). She was treated with fluids and ibuprofen. On March 15, 2006, Plaintiff reported no recent illness or concerns (R. 338), Claimant was doing well, and last pain crisis was two weeks ago and "controlled with Tylenol." (R. 337). She reported another minor crisis in June 2007 (R. 651-52). Claimant did not return to the clinic until she presented with another crisis on February 2008 (R. 641-42). She was treated with fluids and medication, and her pain improved (R. 643).

On June 17, 2008, Claimant was seen at the clinic for a hematology follow-up (R. 632). It was noted that she has had sickle cell crisis to her [right] leg and neck. *Id.* On follow-up visit December 2008, Plaintiff "does not voice any concerns regarding any sickle cell crisis pain or fever" (R. 626). On January 5, 2009, Claimant returned, and reported that she was doing well (R. 627). It was noted that her vasoocclusive crises in her back and thighs were reported to be variable in frequency, ranging from two to three times a month to once every two to three months, and were "mostly manageable at home." *Id.* Claimant was doing well at school. On June 19, 2009, she returned to the clinic (R. 614). It was noted that she "gets minor VOC's (in her back/thighs) mostly managed with oral analgesics." *Id.* On December 22, 2009, Dr. Wall saw Claimant, and noted: "she has had no significant pain crisis and has been managed at home with Tylenol with codeine." (R. 608).

In addition to the treatment notes, the ALJ considered the opinions of treating, examining and non-examining physicians. Dr. Wall completed a questionnaire on January 4, 2001, confirming that Plaintiff has sickle cell disease and that within a reasonable degree of medical certainty it could result in vasoocclusive crises (R. 192). It was also Dr. Wall's opinion that these crises could be severe enough to cause the child to cry and have difficulty sleeping and could occur as often as once a month lasting up to several days (R. 192). As noted by the ALJ, however, the subsequent treatment notes

indicate a much milder course, and "the severity of the claimant's crises has not resulted in emergency room treatments or hospitalizations for the past 8 years." (R. 223).

On October 4, 2005, Claimant was examined by Mary Janarious, M.D. for a disability evaluation (R. 314-315). Dr. Janarious noted that the claimant gets pain in her arms and legs "six to seven times per year" and was last hospitalized for a "pain crisis" in 1998 (R. 314). She was usually treated with Advil and Tylenol with codeine and also takes a daily folic acid supplement. *Id.* Dr. Janarious opined that based upon her examination of Claimant and review of the medical records, Claimant's condition resulted in no limitation in five domains and less than marked in one (R. 221, 314-316).

The record also includes the November 2007 testimony from Dr. Rubini, *supra* at footnote 4, who opined that Claimant's crises were not severe and her impairment did not meet any listing, including the listing for sickle cell disease, Listing 107.05A (R. 700-01, 709-10, 712). Additionally, two childhood disability forms completed by non-examining, non-treating State physicians are of record (R. 139-142 and 176-179). Both physicians noted that Plaintiff has sickle cell anemia which did not meet, medically equal, or functionally equal the severity of any listed impairment (R. 139 and 176).

As noted by the ALJ, no physician has determined that Claimant's disease meets or equals the Listing (R. 222).

In addition to the medical evidence, the ALJ considered and discussed non-medical evidence at length in her decision, as required by the ruling in *Shinn* (R. 218-225). On May 26, 2006, Claimant's fourth grade teacher, Deborah Armstrong, wrote a letter regarding Claimant's pain (R. 336). She described one occasion in which Claimant "very calmly told me that her leg hurt." *Id.* Since it was only one hour until dismissal, Mrs. Armstrong "just had her sit and rest it." Plaintiff

called Ms. Armstrong after she picked Claimant up from the bus stop and Ms. Armstrong "could hear [Claimant] in the background screaming in agonizing pain." *Id.* Claimant did not come back to school for almost a week. After this incident, Ms. Armstrong made sure Claimant called home any time she mentioned being in pain. *Id.* While the incident described was notable, Mrs. Armstrong stated that "this did not happen often." *Id.*

The ALJ also set forth and considered the testimony of Plaintiff and Claimant (R. 218-225, 739-765, 773-774). Although Plaintiff testified that Claimant suffers from about ten or eleven crises a year, and that the pain caused much distress, the ALJ found that "the frequency of [C]laimant's symptoms of pain have not significantly reduced her ability to function in her schoolwork or in her activities of daily living" (R. 223). The ALJ noted Claimant's testimony that she received A's and B's, and her mother's testimony that she does well in school (R. 223, 224, 753, 777); Claimant's testimony that she is aware of various factors that cause her crises (*e.g.,* weather, working out too hard in P.E. class, walking into a closed area with air conditioning) (R. 224, 778-79); and Claimant's testimony that she has friends at school and, although she does not participate in after-school activities, she participated in television production activities at school (R. 224, 774-75). The ALJ also noted Claimant's response to the question: "do you feel that you have been marked by having this disease, or do you fe[e]l that you're a normal child, and you can do the things you want to do in your life?" (R. 225, 780). Claimant responded: "It's not like I can't live like anybody else, I just have to be careful [of] what I'm doing." (R. 225, 780).

There is ample evidence to support the administrative conclusion that Claimant's sickle cell disease did not meet or equal the Listing. While there is episodic evidence of early hospitalizations, Claimant's doctors noted that over the course of many years, her disease presented in occasional, mostly minor crises that were manageable at home. The expert opinions are in accord, and the

-11-

administrative decision shows that the ALJ also fully considered the non-medical testimony of Mrs. Armstrong, Plaintiff and the Claimant in reaching this conclusion. The Court finds the administrative decision is supported by substantial evidence.

*Proper Standards of Law*

Plaintiff's final contention asserts that the ALJ failed to state the weight she accorded the testimony of Plaintiff and Claimant, as required by *Cowart v. Schweiker,* 662 F. 2d 731 (11th Cir. 1981). A review of the administrative decision belies such an argument. The ALJ summarized the testimony of these witnesses at great length, and the rationale for crediting portions of the testimony while rejecting testimony of disabling limitations is fully set forth (R. 212-225).[5]

Nor is the Court persuaded by Plaintiff's contention that the decision of the appellate court in *Shinn* somehow mandates a different result. In *Shinn,* the Eleventh Circuit held that "the ALJ erred in failing to consider the testimony of Yvonne's mother" and remanded the case for further proceedings. *Shinn, supra,* 391 F.3d at 1286. In her brief, Plaintiff appears to contend that her testimony is enough to establish as a matter of law that the Listing was met, citing the following excerpt from *Shinn*:

> Thus, Yvonne's mother's testimony suggests that Yvonne suffered episodes that closely resemble those Dr. Wall specifically warned "could" happen, fit the description of vaso-occlusive episodes, were treated as vaso-occlusive episodes, and resemble other crises for which Yvonne was hospitalized that were expressly declared vaso-occlusive episodes by medical personnel. Once the testimony of Yvonne's mother is considered, it builds a persuasive case that Yvonne suffered from "recent, frequent severe vaso-occlusive crises."

---

[5]For example, the ALJ made note of Plaintiff's comments to Claimant's doctors regarding the fact that Claimant was "doing well" (R. 213-214), was "active and thriving" (R. 225), did very well in school (R. 218-219), rides her bike and does many other things children do (R. 220). The ALJ found that the evidence showed that the frequency of Claimant's symptoms "have not significantly reduced her ability to function in her schoolwork or in her activities of daily living" (R. 223). The ALJ also contrasted the testimony with the medical evidence and noted that: "According to the doctor's reports, her crises have decreased in both numbers and severity. The claimant's testimony at the March 2010 hearing supported this allegation from the claimant's treating physician." (R. 230).

*Shinn,* 391 F.3d at 1287.

Plaintiff's implicit contention that the ALJ must therefore find Plaintiff's testimony to be conclusive of disability is mistaken. While the *Shinn* court did hold that it was error to fail to consider the testimony of Claimant's mother, it did not find that such testimony *necessarily* established disability. Indeed, with respect to Plaintiff's testimony, the *Shinn* court specifically noted: "The substance of that testimony, along with the medical testimony discussed above, *may* be sufficient to prove that Yvonne suffered from "recent, recurrent, severe vaso-occlusive crises." *Id.* (emphasis added). If, as Plaintiff implies, *Shinn* required the ALJ to fully credit Plaintiff's testimony as persuasive for disability, the remand for additional consideration would have been unnecessary and the appellate court would have simply remanded for an award of benefits. That, of course, did not occur. This Court finds that *Shinn* stands for the principle that the ALJ must consider all evidence, medical and non-medical, in evaluating Claimant's application. The instant administrative decision shows that the ALJ did just that. As that decision was made in accordance with proper standards of law and is supported by substantial evidence, it should be **AFFIRMED.**

A final note is in order. In recommending that the administrative decision be affirmed the Court nonetheless recognizes that Claimant has a serious disease that affects her life in a very real way. Further, the record establishes that Claimant is by all accounts a bright young woman who faces the challenges of her illness with grace and fortitude. The issue is not, however, whether Claimant is "deserving," as stated by her mother (R. 225). The issue is whether her condition is such that it meets the specific criteria established by law. The ALJ reviewed the evidence and determined that she was not disabled, as so defined. As that decision was made in accordance with appropriate standards and is adequately supported, this Court has no choice but to affirm.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the administrative decision be **AFFIRMED.** If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 22, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy